**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Criminal Action |
| ) | No. 06-3005-01/02-CR-S-RED |
| JEREMY ALAN CYOPECK and ) | |
| ROBERT ASHLEY WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Defendants have filed a Motion to Suppress Evidence, in which they assert that evidence seized as a result of a vehicular search should be suppressed. The United States filed its responses. The matter was set for an evidentiary hearing, which was held before the undersigned on April 25, 2006. Defendant Cyopeck was present with counsel, Michelle Nahon, Assistant Federal Public Defender, and defendant Williams was present with counsel, Stuart Huffman. The United States was represented by Kimberly Weber Dean, Special Assistant United States Attorney.

It is defendant Cyopeck's contention that he did not voluntarily consent to the search of his vehicle. He denies that the officer requested consent, and further denies granting it.

Defendant Williams asserts that the traffic stop was pretextual, and that he was pulled over on the basis of his race combined with the fact that he was in a vehicle with out-of-state/country plates. It is his contention that the officer initiated a traffic stop only after pulling up along side the vehicle and looking in to determine occupancy.

The government called Sergeant Jack McMullin of the Missouri State Highway Patrol. On

1

December 18, 2005, at 4:45 p.m., he stopped a green 1998 Chevrolet Astro Van on I-44. The van had passed him, exceeding the speed limit by at least ten miles per hour. He could not see the occupants of the vehicle as it passed him. It was not until he stopped the vehicle and was behind it that he could determine the race or gender of any of the occupants. His intention in stopping the vehicle was to advise the driver that he was exceeding the speed limit. The registration indicated that the vehicle was from Ontario. Defendant Cyopeck was driving, and defendant Williams was the passenger. Neither man was the registered owner of the vehicle. When the sergeant made contact with the driver, he had him sit in his patrol car, and advised him of why he stopped him. The driver indicated that he did not know the speed limit had changed. The officer asked him where he was from, and what his itinerary was. He asked him who the van belonged to, and the driver said it was his aunt's. He said he worked at a steel mill, and was going to Amarillo, Texas, to visit a friend who played hockey there, for four or five days. Defendant Cyopeck was quite nervous, and appeared to have a dry mouth. He spoke English, and appeared to understand the questions the officer was asking. There was nothing about his appearance that lead Sergeant McMullin to believe that he was intoxicated or otherwise impaired. While the officer had the driver in his vehicle, the passenger, defendant Williams, was in the right-side passenger seat in the front of the van. The officer had a videotape of the stop, but the audio-portion of the tape was not on. This was because he has had problems with the audio recording equipment, and just doesn't use it. He testified that the videotape accurately reflected, visually, what happened. Sergeant McMullin left defendant in his patrol car, and went to talk to defendant Williams, for the purpose of identifying him and asking him about the trip. He then returned to his vehicle, and asked defendant Cyopeck if there was anything illegal in the van, such as large sums of money or drugs. He then he asked for permission

to search the vehicle, which defendant gave. When he asked for permission, defendant offered no objection, and said, "okay." [Tr. 15]. In terms of who opened the back of the van, Sergeant McMullin admitted that he had written in his report and had testified at the preliminary/detention hearing that he had opened the back of the van. In reviewing the videotape, he noticed a discrepancy, because he saw that defendant had actually opened up the back glass. While he conducted the search, both individuals were in the van, and could see what was going on. No one asked him to stop the search. The officer estimated that the whole stop lasted five or six minutes until the time he found the contraband. He then had Cyopeck come back to his vehicle, and asked him to identify one of the bags of pills. Defendant Cyopeck stated that he thought it was Ecstasy. Sergeant McMullin then arrested and Mirandized both defendants.

On cross examination, Sergeant McMullin testified that defendant Williams offered the same explanation for their trip as that provided by defendant Cyopeck. He admitted that he did not use a written consent to search form in this case, although he had done so in the past. The officer also admitted that, although his vehicle had audio-recording capability, he did not use it. He acknowledged that his report indicated that he asked defendant for consent to search, handed him back his driver's license, and then proceeded to the back of the van, at which time he opened the back glass. He denied telling defendant Cyopeck that he was going to talk with his partner, search his vehicle, and then let them go. He reiterated that he asked for permission to search the vehicle, and stated that defendant Cyopeck offered no objection.

Upon questioning by defense counsel for defendant Williams, Sergeant McMullin stated that after he saw the vehicle speeding, did not see it slow down, and observed that it stayed in the left lane, he decided to stop it. His vehicle was unmarked. The video-recording equipment is activated

3

when the red lights come on, but the audio portion does not come on automatically. When he was pacing the vehicle, which was probably for about a quarter of a mile, he did not recall if he ever pulled up beside it. He may have been toward the back or side of the vehicle for a minute. The van was in the passing lane, driving at the same faster rate of speed, and then seemed to slow down and pull over into the right lane, making corrections. Sergeant McMullin activated his lights and initiated the stop. He could not tell much about the occupants at the time he actually pulled them over. It was his testimony that he handled this stop as he routinely does, by checking the itinerary, and keeping the individuals separated. He evaluates demeanor in deciding whether to ask permission to conduct a search. He doesn't necessarily rely on the fact that the stories matched. Sergeant McMullin admitted that, although defendant was nervous, he was not stuttering, shaking, or sweating profusely, and thus did not show signs of extreme nervousness. He reviewed the criteria he considers in deciding whether to ask to conduct a search, which in this case included the following: defendants were from Canada; they were not driving their own vehicle, but rather, were driving an aunt's van; they both initially said they were cousins, but then said they just considered themselves cousins; and, while they both indicated they were going to Amarillo to see a friend play hockey for a short period of time, defendant Cyopeck later said the friend was actually going to be practicing, not playing a game. Sergeant McMullin admitted that the license plates checked out to the person that the occupants said the vehicle belonged to, and there was no indication the van was stolen. He may not have run defendant Cyopeck's driver's license, and he never asked for defendant Williams' license, nor did he ask him about searching the vehicle. He felt that the "Support Your Troops" bumper sticker was another factor that caused him to have a "hunch," based on this twenty-six years of experience with people transporting drugs, that something was going on.

[Tr. 35]. Sergeant McMullin testified that the reason he detained defendants and asked to search the vehicle was because he simply did not believe their stories, which although consistent, sounded made up. He acknowledged that he did not have direct probable cause to conduct a search without permission from the individuals.

On the videotape, which was viewed in open court during the hearing on the motions to suppress, defendant Cyopeck can be seen exiting the patrol car, and opening up the back glass door of the Astro Van.

Regarding the issue of defendant Cyopeck giving consent, defendant argues that he is not conceding that he gave consent, but that even if he had, that it was not given knowingly and intelligently. He contends that Sergeant McMullin held onto his driver's license and documents until after he gave consent. It is defendant's position that consent is not deemed voluntary if the documents are not returned before the request for consent to search is made because a defendant would not feel free to terminate the encounter, relying on two cases from the Tenth Circuit, United States v. Gonzalez-Lerma, 14 F.3d 1479 (10th Cir. 1994), and United States v. Lee, 73 F.3d 1034 (10th Cir. 1996). Based on this contention and the officer's testimony, defendant Cyopeck asserts that he did not give consent for the search of the vehicle.

The government maintains that the van was lawfully stopped because of a traffic violation, and that defendant Cyopeck voluntarily consented to the search of the van. Using the factors to determine the voluntariness of consent set forth in United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990), the government contends that defendant's consent was voluntary.

The law is well-established that a traffic violation provides an officer with probable cause to stop a vehicle, regardless of the severity of the violation. United States v. Jones, 275 F.3d 673,

5

680 (8th Cir. 2001); United States v. Enriquez Luna, 368 F.3d 876, 878 (8th Cir. 2004). In this case, the undisputed evidence was that defendant was driving over the speed limit. Based on the testimony adduced at the hearing and applicable case law, the Court finds, initially, that there was a valid traffic stop.

Once a valid traffic stop occurs, the investigating officer is only entitled to conduct an investigation reasonably related in scope to the circumstances that justified the initial stop. Terry v. Ohio, 392 U.S. 1 (1968). It is also clear that where an individual is detained after an initial lawful stop, the question is whether the detention was "reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Cummins, 920 F.2d 498, 502 (8th Cir. 1990). Law enforcement officers are entitled to stop and briefly detain an individual for investigative purposes if there is reasonable suspicion that criminal activity may be afoot. United States v. Hill, 91 F.3d 1064, 1069 (8th Cir. 1996). A police officer may also run a computer check to establish whether the vehicle might have been stolen or whether there are outstanding warrants for any passengers in the car. See United States v. McManus, 70 F.3d 990, 993 (8th Cir. 1995); United States v. Johnson, 58 F.3d 356, 357 (8th Cir. 1995). Additionally, if the responses provided give rise to suspicions unrelated to the traffic offense, the officer's inquiry may be broadened. Id. at 357. This includes asking the driver for his license and registration, requesting him to sit in the patrol car, and inquiring as to the driver's destination and purpose. Id. Further, if a defendant is detained incident to a traffic stop, the officer does not need reasonable suspicion to continue the detention until the purpose of the traffic stop has been completed. See United States v. Jones, 269 F.3d 919, 924-25 (8th Cir.2001). The Eighth Circuit has clearly held that, even without reasonable suspicion, if an encounter after a traffic stop's completion is consensual, a law enforcement officer

6

may ask questions unrelated to the traffic stop and request consent to search the vehicle. United States v. Santos-Garcia, 313 F.3d 1073, 1078 (8th Cir. 2002).

Sergeant McMullin testified that defendant, although nervous, spoke English, was not intoxicated or otherwise impaired, and appeared to understand the questions being asked of him. Having viewed the videotape in open court, there was nothing about the encounter that suggested coercion or duress. Further, contrary to defendant's assertion, the officer had no legal obligation to obtain written consent. E.g., Ohio v. Robinette, 519 U.S. 33, 39-40 (1996); United States v. Morgan, 270 F.3d 625, 630 (8th Cir. 2001). When Sergeant McMullin asked for permission to search the vehicle, there is no evidence to suggest that defendant Cyopeck did not consent voluntarily. Although Sergeant McMullin testified that defendant merely indicated that it was okay to search, the fact that defendant willingly walked to the back of the van and opened the back glass door himself belies his contention that he did not knowingly and voluntarily consent. There was no evidence adduced at the hearing nor through the videotape to suggest that the officer acted in any manner that would suggest deceit, duress, or coercion. Further, according to the officer's testimony, defendant did not object to the search or attempt to withdraw his consent.

This Court has also reviewed the cases cited by defendant Cyopeck regarding his contention that he was coerced into consenting because Sergeant McMullin did not return his license and documents to him before he asked for consent to search. It should be noted that the principle upon which defendant relies is based on Tenth Circuit law, which is not the law in the Eighth Circuit. Defendant has not referred the Court, moreover, to any Eighth Circuit precedent, nor has the Court found any cases, that would support his contention that the fact that the officer had defendant's driver's license and documents in his possession when he requested consent to search rises to the

7

level of coercion or duress legally sufficient to render his consent involuntary. In this case, not only does the Court have before it the credible testimony of Sergeant McMullin, but it also has the benefit of the videotape, which supports the conclusion that defendant acted knowingly and voluntarily in rendering consent, to the extent of actually assisting with the search.

The Court concludes that, based on the totality of the circumstances, defendant Cyopeck's consent was voluntarily given. Chaidez, 906 F.2d at 380-81. Accordingly, it must be recommended that his motion to suppress be denied.

In terms of defendant Williams' motion to suppress, the government asserts that he does not have standing to contest the stop, detention of the vehicle, or search of its contents unless he wants to claim ownership of the bags in which the drugs were located.

It is defendant's position that he had a reasonable expectation of privacy in the vehicle in which he was traveling, because it belonged to a family member. He contends that he does not have to be a driver to challenge the legality of the stop. It is his contention that the detention was longer than necessary, and that the stop was not based on probable cause. Defendant Williams asserts that the stop was pre-textual because he is African American, and he was pulled over on the basis of his race and the fact that he was in a vehicle with out-of-state/country plates. Defendant Williams also asserts that the accounts of their purpose and destination were essentially the same, that the "Support your Troops" decal was not uncommon on a Canadian vehicle, and that they were not unduly nervous. Therefore, on these grounds, he asserts that there was not probable cause to stop and search the vehicle.

After the hearing before the undersigned, defendant Williams filed a response regarding the standing issue. He continues to assert that he had a reasonable expectation of privacy under the

Fourth Amendment. This claim is based on the fact that he was detained for questioning, and that the officer did not have reasonable suspicion and/or probable cause to detain him after the purpose of the stop was concluded. It is his position that he does not have to claim an ownership interest in the items that were seized to maintain standing to seek suppression of the evidence. He asserts that the evidence presented at the hearing was consistent with his theory that it was the stop itself and his being detained that led to the violation of his constitutional rights under the Fourth and Fourteenth Amendments.

Although defendant Williams lacks standing, as a mere passenger, to contest the search of the vehicle, Rakas v. Illinois, 439 U.S. 128, 138-44 (1978), he can contest the lawfulness of his own detention and seek to suppress evidence as the fruit of his illegal detention. United States v. Green, 275 F.3d 694, 699 (8th Cir. 2001). "A passenger has standing to challenge his detention because all occupants of a stopped vehicle are subject to a Fourth Amendment seizure." Id. at 699, citing Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990). Accordingly, for purposes of the suppression issue, the Court concludes that defendant Williams has standing to contest the lawfulness of his detention and to seek suppression of the evidence.

In this case, defendant asserts that he was stopped because of racial profiling, and that his detention was too lengthy. He argues that there was neither probable cause nor reasonable suspicion to support the stop. For the reasons previously set forth in this report and recommendation, it is clear that the stop was a valid traffic stop, and that Sergeant McMullin's actions were in accord with the standard set forth in Terry and its progeny. Additionally, Sergeant McMullin credibly testified that he noticed the vehicle because it was speeding, and he was not even aware of the gender or race of the occupants until he had stopped the vehicle. According to his testimony, the entire stop, until

9

he found the contraband, lasted only five or six minutes. The Court concludes, based on the totality of the evidence, that defendant's assertions are merely speculative, are contradicted by the evidence, and do not raise Fourth Amendment concerns.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendants' Cyopeck and Williams Motions to Suppress Evidence be denied.

/s/ James C. England<br>
JAMES C. ENGLAND, CHIEF<br>
United States Magistrate Judge

Date:   5/12/06